J-A13042-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| VLADIMIR VOLOCHIN, | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| TATIYANA VOLOCHIN, | : | |
| | : | |
| Appellant | : | No. 908 EDA 2017 |

Appeal from the Decree and Order Entered February 15, 2017
in the Court of Common Pleas of Philadelphia County
Domestic Relations at No(s): July Term, 2011 No. 8497

BEFORE:    BENDER, P.J.E., LAZARUS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:            **FILED JULY 17, 2020**

Tatiyana Volochin (Wife) appeals from the February 15, 2017 decree and order, which finalized the divorce between Wife and Vladimir Volochin (Husband), ordered equitable distribution of their marital property, denied Wife's request for alimony, and awarded counsel fees. Upon review, we affirm.

We provide the following background. Husband and Wife were married on August 20, 1997. They did not have any children. Husband initiated divorce proceedings in July 2011.

> Husband filed [] an amended complaint on November 21, 2011. Wife filed a counter-affidavit on September 11, 2013, in which she opposed the entry of a divorce decree and raised a claim for economic relief. During the course of the litigation Wife has consistently received alimony *pendente lite* (APL) in varying amounts. In 2014, the amount of APL was $552.95 per month. Husband sought to modify that amount in a petition filed on December 1, 2014. That petition was heard before a support

_____

*Retired Senior Judge assigned to the Superior Court.

master, was granted pursuant to an interim order dated March 19, 2015, and Wife's APL award was modified to $199.68 per month based upon the changed circumstance of Husband's having lost his job. Both Husband and Wife filed exceptions to the master's recommendation. By order dated October 5, 2015, the court granted in part and denied in part each of the exceptions and by agreement the matter was remanded to the support master for a full hearing on Husband's current earning capacity and ability for Husband to provide medical coverage. After a remand hearing, the support master recommended denial of Husband's petition to modify on April 28, 2016, keeping the APL award at $199.68 per month. Wife filed exceptions that alleged, *inter alia*, error by the master in not concluding that Husband and/or his attorney had intentionally misled the court in 2014 by withholding a document purportedly showing that Husband had been dismissed from his employment for cause. Wife's exceptions were denied on November 18, 2016.

Simultaneous to the support litigation, a series of hearings were held before a divorce master regarding equitable distribution. Each of the parties was represented by counsel at the hearings, and on October 20, 2015, the master filed his report and recommendation. Wife then filed a praecipe for trial *de novo*, and the matter was assigned to Judge Ourania Papademetriou on February 1, 2016. The trial commenced on June 16, 2016, and was continued for an additional protracted hearing on January 25, 2017. At the conclusion of the trial, the [trial court] took the matter under advisement.

Trial Court Opinion, 11/15/2018, at 1-2 (emphasis, quotation marks, original brackets, and citations omitted).

On February 15, 2017, the trial court entered an order declaring Husband and Wife divorced, and resolving their claims of equitable distribution, alimony, and counsel fees, as indicated above. Regarding equitable distribution, the trial court, *inter alia*, awarded Wife full ownership of the marital home and 50-50 ownership of an apartment in Ukraine, as

well as $5,108.98 from an escrow account,[1] which held a total of $18,108.98. Trial Court Order, 2/15/2017, at ¶ 18. The trial court denied Wife's request for alimony and APL. *Id.* at 21-22. Both Wife and Husband sought an award of counsel fees, which the trial court granted by dividing the remaining $13,000 from the escrow account between counsel, 50-50. *Id.* at 24.

Wife filed a motion for reconsideration, which the trial court denied on March 1, 2017. This timely filed notice of appeal followed.[2, 3] On appeal, Wife raises the following questions for our review.

1. Did the court err in not recalculating the [APL] order from 2012[4] after Husband (by his attorney) admitted to the court that he had withheld for [2½] years (for the purpose of intentionally misleading the court) a critical material document that led the court to an improper APL award?

2. Did the court err in accepting Husband's statements at the APL hearings that his change of circumstances [was] a result of action not within his control?

---

[1] This account was established to pay the arrears on the mortgage for the marital home.

[2] Both Wife and the trial court have complied with the mandates of Pa.R.A.P. 1925.

[3] This Court stayed the appeal because Wife had initiated bankruptcy proceedings. The bankruptcy proceedings have been terminated and the stay has been lifted.

[4] For clarity, based on Wife's argument, she is challenging the 2014 recalculation following Husband's termination from employment, not the original 2012 calculation.

3. Did the court err in not considering how the effect of the recalculated [APL] order would affect equitable distribution?

4. Did the court err in not considering that Wife's family had purchased the apartment in Ukraine?

5. Did the court err in awarding counsel fees to be paid from an account specifically set up to pay or negotiate payment of the parties' mortgage for the marital residence? Without this account, it would be impossible to negotiate a settlement with the mortgage company thus resulting in the eviction of [Wife] from the marital residence. In fact, the court's action directly led to the filing of a bankruptcy [action].

6. Did the court err in not awarding Wife some amount of alimony because of her age and health (in addition to her role as homemaker who stayed home for 14 years to care for Husband) until the time that he left and he filed for divorce?

7. Did the court err in an equitable distribution order of 50-50, leaving Wife, who is older and in worse health, without alimony after she stayed at home to take care of Husband for 15 years?[5]

Wife's Brief at 4-5 (emphasis, unnecessary capitalization, and Wife's answers omitted).

Preliminarily, we note that Wife has failed to develop meaningfully any argument in support of her third, fourth, sixth, and seventh issues. *See* Wife's Brief at 12 (presenting two sentences in support of third issue; presenting two sentences in support of fourth issue), 14 (combining sixth and seventh issues into one argument spanning three sentences). Indeed,

---

[5] We note the discrepancy between Wife's sixth and seventh questions for review in terms of whether she stayed home for 14 or 15 years. Because we find these issues waived for the reasons stated *infra*, we need not determine which calculation, if either, is correct.

the nugatory arguments proffered in support of these issues lack any citation to the record or legal authority.

> Our rules of appellate procedure require an appellant to support his or her argument with pertinent analysis, including citation to and discussion of relevant authority and facts of record. **See** Pa.R.A.P. 2119. This court will not become the counsel for an appellant and develop arguments on an appellant's behalf, and waiver of an issue results when an appellant fails to properly develop an issue or cite to legal authority to support his contention in his appellate brief.

**Commonwealth v. Cox**, 72 A.3d 719, 721 n.3 (Pa. Super. 2013) (some citations omitted). Accordingly, these issues are waived.

We thus begin our analysis with Wife's challenge to the APL modification following Husband's termination from employment.[6] Wife's Brief at 10-12. Specifically, Wife assails the reduction of the initial APL award because she alleges that Husband intentionally misled the master by withholding a termination letter. **Id.** We review this claim mindful of the following.

> Our standard of review for awards of [APL] is: If an order of APL is bolstered by competent evidence, the order will not be reversed absent an abuse of discretion by the trial court.
>
>> APL is based on the need of one party to have equal financial resources to pursue a divorce proceeding when, in theory, the other party has major assets

---

[6] We note that Wife listed two separate APL claims in the statement of questions (claims one and two) but addressed them together in the argument section of her brief, in contravention of Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). However, because the claims are interrelated and can be consolidated into a single argument, we will address them as one claim.

which are the financial sinews of domestic warfare. ... APL focuses on the ability of the individual who receives the APL during the course of the litigation to defend her/himself, and the only issue is whether the amount is reasonable for the purpose, which turns on the economic resources available to the spouse.

In ruling on a claim for [APL], the court should consider the following factors: the ability of the other party to pay; the separate estate and income of the petitioning party; and the character, situation, and surroundings of the parties.

*Ileiwat v. Labadi*, ___ A.3d ___, 2020 WL 2894895 at *5 (Pa. Super. 2020) (citations and quotation marks omitted).

"An award of [APL] may be modified or vacated by a change in circumstances.... It is the burden of the party seeking to modify an order of support to show by competent evidence that a change of circumstances justifies a modification." *Busse v. Busse*, 921 A.2d 1248, 1255 (Pa. Super. 2007) (citation and quotation marks omitted). Our Rules of Civil Procedure provide guidelines for seeking a modification of a support order based on a reduction in income. *See* Pa.R.C.P. 1910.16-2(d); 1910.19(c). When a party files a petition for modification, Pa.R.C.P. 1910.19(c) provides in pertinent part that "the trier-of-fact may modify [] the existing support order in any appropriate manner based on the evidence presented without regard to which party filed the petition for modification" so long as the "trier-of-fact finds that there has been a material and substantial change in circumstances[.]" Pa.R.C.P. 1910.19(c). Relevant to this appeal, however, Pa.R.C.P. 1910.16-2(d)(1) provides that a when a party "is fired for cause,

there generally will be no effect on the support obligation."[7]  On the other hand, "appropriate adjustments will be made for substantial continuing involuntary decreases in income, including but not limited to the result of [] termination[] unless the trier of fact finds that such a reduction in income was willfully undertaken in an attempt to avoid or reduce the support obligation."  Pa.R.C.P. 1910.16-2(d)(2).

By way of background, in 2014, Husband moved to modify the APL award following his termination from employment.  On March 19, 2015, the master entered an interim order reducing the APL award to $199.68 per month.  Both Husband and Wife filed exceptions, which the trial court granted in part and denied in part.  The parties agreed to a remand hearing before the support master on Husband's ability to pay and earning capacity.

Although the hearing was limited to those two issues, at the January 20, 2016 hearing, Husband introduced a termination letter, dated April 1, 2014.  *See* N.T., 1/20/2016, at 141-45.  The record is unclear because counsel were talking over each other, but it appears that Wife's counsel had not seen the letter previously.  At the subsequent April 18, 2016 hearing, Wife's counsel questioned Husband extensively about the termination letter

---

[7] "For cause" termination is not defined in the statute or relevant case law, but this Court has held that decisions and findings of fact by the Unemployment Compensation Bureau "are not necessarily reliable in a subsequent civil action and have no preclusive effect in those later proceedings."  *Ewing v. Ewing*, 843 A.2d 1282, 1287 (Pa. Super. 2004). Regardless, as discussed *infra*, Wife does not challenge the finding that Husband was not fired for cause.

and whether it indicated that he was terminated for cause, contrary to his prior testimony.[8]  On April 28, 2016, the master kept the reduced APL award in effect and found, *inter alia*, that there was insufficient evidence to conclude that Husband had been terminated for cause.  Wife filed exceptions claiming that the master erred in not concluding that Husband had intentionally misled the master by withholding a document that established Husband had been terminated for cause.  The trial court denied Wife's exceptions, explaining its reasoning for doing so in its Pa.R.A.P. 1925(a) opinion, as follows.

> The document [that Wife claims Husband withheld] is a letter from Husband's former employer dated April 1, 2014, that advised Husband that his employment was terminated because he had acted in "direct violation" of the company's policies regarding access to and use of its computer systems.  …
>
> Wife's arguments ignore the role of the trial court in determining issues of credibility and consideration of evidence. Whether the letter advising Husband of his termination due to a violation of company policy constituted a termination for cause was a matter within the discretion of the trial court.  The weight to be afforded to this evidence was also within its discretion. The [trial c]ourt considered the letter[] and determined that it was not sufficient to establish that Husband had been terminated for cause.  In fact, Husband received unemployment compensation benefits from his former employer for a six-month period after his employment was terminated.  A permissible inference from Husband's having received unemployment benefits is that his former employer did not establish that

---

[8] We cannot review Husband's prior testimony in this regard because the record only contains the January 20, 2016 and April 18, 2016 hearing transcripts.  According to the Master's recap, Husband testified that "he was let go[] because he was spending too much time with personal problems and not doing an accurate job of doing his job."  N.T., 1/20/2016, at 7.

Husband was terminated for cause. As such, the competent evidence and the inference to be drawn therefrom supports the determination that the letter informing Husband of his termination from employment was not probative of [whether] Husband, or his attorney, withh[eld] a "critical material document" from the support master.

Trial Court Opinion, 11/15/2018, at 7-9 (record citations omitted).

On appeal, Wife does not argue that the master erred in concluding that Husband was not terminated for cause. Rather, she contends that she is entitled to a remand and recalculation of the APL order because she believes that Husband knowingly lied about his termination circumstances in earlier hearings and intentionally withheld the termination letter. Wife's Brief at 11. According to Wife, "[i]f the support modification is upheld, the message to the payor would be 'just lie[,'] there are no consequences." *Id.* at 12.

Wife's argument ignores that the master had the benefit of the termination letter prior to entering its order sustaining the reduced APL award. Moreover, the master had the opportunity, at the April 18, 2016 hearing, to observe Husband as Wife's counsel cross-examined him extensively about the circumstances of his termination, his prior testimony, when he received the termination letter, the content of the termination letter, and why it was not presented earlier. Despite Wife's averments that Husband and his counsel intentionally withheld the document from the support proceedings, the master ultimately considered the termination letter in determining whether to sustain the reduced APL award and concluded that

the termination letter did not affect its conclusion that Husband was not terminated for cause. Upon review, we find no abuse of discretion in the trial court's denial of Wife's exceptions to the master's conclusion regarding Husband's alleged intentional withholding of the document. Accordingly, Wife is not entitled to relief on this claim.

Finally, we address Wife's claim that the trial court erred in awarding the payment of counsel fees from the escrow account "at the expense of the parties."[9] Wife's Brief at 12. We consider this claim mindful of the following.

> Section 3702 of the Domestic Relations Code permits the trial court to award reasonable counsel fees where appropriate. 23 Pa.C.S.[] § 3702.[10]

---

[9] Wife also argues that the trial court erred in awarding counsel fees to Husband without any showing of need by Husband. Wife's Brief at 13-14. *See also* Wife's Brief at 9 (Summary of the Argument) (emphasis in original) (stating "the trier of fact erred in awarding **any** counsel fees to Husband's counsel. This reward to one who deceptively sleazed the court and []Wife should not be rewarded for his actions, the trial court should have referred it to the Disciplinary Board."). However, Wife did not challenge the award of counsel fees to Husband in her Pa.R.A.P. 1925(b) statement. Instead, she challenged the trial court's decision to order payment of counsel fees from the escrow account. *See* Wife's Concise Statement of Matters, 4/5/2017, at ¶ 5. Accordingly, any claim challenging the award itself is waived. *See Commonwealth v. Castillo*, 888 A.2d 775, 780 (Pa. 2005) (holding that any issues not raised in an ordered Rule 1925(b) statement are waived on appeal).

[10] Subsection 3702(a) provides as follows.

> **(a) General rule.--**In proper cases, upon petition, the court may allow a spouse reasonable alimony *pendente lite*, spousal support and reasonable counsel fees and expenses. Reasonable counsel fees and expenses may be allowed *pendente lite*, and the court shall also have authority to direct that adequate health

*(Footnote Continued Next Page)*

> We will reverse a determination of counsel fees and costs only for an abuse of discretion. The purpose of an award of counsel fees is to promote fair administration of justice by enabling the dependent spouse to maintain or defend the divorce action without being placed at a financial disadvantage; the parties must be 'on par' with one another.
>
> Counsel fees are awarded based on the facts of each case after a review of all the relevant factors. These factors include the payor's ability to pay, the requesting party's financial resources, the value of the services rendered, and the property received in equitable distribution.
>
> Counsel fees are awarded only upon a showing of need. In most cases, each party's financial considerations will ultimately dictate whether an award of counsel fees is appropriate. Also pertinent to our review is that, in determining whether the court has abused its discretion, we do not usurp the court's duty as fact finder.

*Brubaker v. Brubaker*, 201 A.3d 180, 191 (Pa. Super. 2018) (citation omitted).

In response to Wife's claim that the trial court erred in ordering payment of counsel fees from the escrow account, the trial court provided the following explanation for its order in its Pa.R.A.P. 1925(a) opinion.

> Wife's contention ignores the fact that there were no other monies available to pay counsel fees. Wife had filed for bankruptcy on February 25, 2016, and averred that her monthly net income was $122. In the same bankruptcy filing, Wife

*(Footnote Continued)* ——————————

and hospitalization insurance coverage be maintained for the dependent spouse *pendente lite*.

23 Pa.C.S. § 3702(a).

- 11 -

averred that the amount of the claim for the mortgage on the marital residence was $182,738. By virtue of asking for an award of counsel fees, Wife gave her tacit approval for the [trial c]ourt to award counsel fees from whatever source was available. The credible evidence established that the only liquid asset for the payment of counsel fees was the escrow account. Wife may not now assert error where the [trial c]ourt provided relief that was specifically requested by her.

Further, at the time that the distribution was ordered, there was no credible evidence that a negotiated settlement with the mortgage company was feasible. … As noted, the outstanding balance on the mortgage was $182,738, approximately ten times the amount in the escrow account.

Therefore, the [trial c]ourt awarded counsel fees, as requested by both parties, from a source of funds that was then available. It was apparent to the [trial c]ourt that the original purpose for which the escrow account had been created could not be realized and that further delay in distribution of the escrowed funds was not reasonable. Exercising its discretion akin to the doctrine of *cy pres*, the [trial c]ourt awarded counsel fees as sought by the parties.

Trial Court Opinion, 11/15/2018, at 15-16 (record citations omitted).

Wife rebukes the trial court's decision to order payment of counsel fees from the escrow account as "merely div[vying] up a marital asset, giving each counsel **more** than each party." Wife's Brief at 13 (emphasis in original). Beyond this criticism, Wife fails to present any argument or cite to any legal authority in support. Instead, her entire argument focuses on the award of counsel fees to Husband's counsel, which Wife has waived, as discussed *supra*. Upon review, we find no abuse of discretion in the trial court's ordering payment of counsel fees from an account with available

funds that would not or could not be used for its intended purpose. Accordingly, Wife is not entitled to relief on this claim.

Based on the foregoing, we affirm the decree and order.

Decree and order affirmed.[11]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/20

---

[11] Husband filed an application to quash based on Wife's failure to ensure inclusion of the June 16, 2016 transcript in the certified record. Our review indicates that this transcript related to the equitable distribution of the parties' assets – an issue we do not reach due to waiver. As such, we deny Husband's application to quash.